UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

NEPTALI PERALTA, et al.,

    Plaintiffs,

-against-

CB HOSPITALITY AND EVENTS, LLC, et al.,

    Defendants.

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED:  3/4/2024
```

22-CV-10805 (GHW) (BCM)

**MEMORANDUM AND ORDER**

**BARBARA MOSES, United States Magistrate Judge.**

    Plaintiffs Neptali Peralta and Maria Jovita Tapia Villanueva allege that they were employed by corporate defendants CB Hospitality and Events LLC, CB Hospitality and Events II, LLC, CB Hospitality Ventures Holdings Corp. (collectively doing business as "St. Ned Pizza"), and by individual defendant Chris Barrett, the owner and manager of St. Ned Pizza. *See* First Amended Complaint (FAC) (Dkt. 29) at 1-2; ¶¶ 22, 25, 27. In this action, filed on December 22, 2022, Peralta and Villanueva, suing on behalf of themselves and others similarly situated, seek damages under the federal Fair Labor Standards Act (FLSA) for unpaid minimum wages (both plaintiffs) and unpaid overtime wages (Villanueva only); under the New York Labor Law (NYLL) for unpaid minimum wages (both plaintiffs) and unpaid overtime wages (Villanueva only), unpaid spread-of-hours pay (Villanueva only), and failure to provide written wage notices and wage statements (both plaintiffs); and under the New York City Human Rights Law (NYCHRL) for discrimination based on "perceived immigration status" (Peralta only), national origin (Peralta only), and age (both plaintiffs). *Id*. ¶¶ 98-132.

    Now before the Court is plaintiff Villanueva's motion (Mtn.) (Dkt. 30) for an order: (1) granting conditional certification of her FLSA overtime claim as a collective action, pursuant to 29 U.S.C. § 216(b), on behalf of "all non-managerial, hourly employees employed by defendants

within the last three years ('Covered Employees')"; (2) directing defendants to provide the names and contact information of all Covered Employees; (3) approving plaintiffs' proposed notice and consent forms (Dkts. 31-1 and 31-2); and (4) directing defendants to post the forms "in a conspicuous location in defendant's Restaurants." Mtn. at 1-2; *see also* Pl. Mem. (Dkt. 34) at 1-2. Because plaintiff Villanueva has failed to make even a minimal showing that she and other members of the putative collective were "victims of a common policy or plan" that violated the FLSA, *Myers v. Hertz Corp.*, 624 F.3d 537, 555 (2d Cir. 2010) (quoting *Hoffmann v. Sbarro, Inc.*, 982 F. Supp. 249, 261 (S.D.N.Y.1997)), the motion will be denied.

I.     BACKGROUND

St. Ned Pizza (apparently pronounced "Stoned Pizza") sells "THC pizza," FAC ¶ 22; that is, pizza (and other foods) infused with tetrahydrocannabinol (THC), the active ingredient in marijuana.[1] Plaintiffs allege that there are three St. Ned Pizza locations in New York: at 235 East 4th Street, in the East Village of Manhattan (the East Village Location); at 302 Broome Street, in Manhattan's Lower East Side; and (seasonally) at 3050 Stillwell Avenue in Brooklyn. *Id*. ¶ 22. In their motion papers, they further attest, vaguely, that defendants also sold THC pizza at defendant Barrett's home, Villanueva Aff. (Dkt. 33) ¶ 6; Peralta Decl. (Dkt. 32) ¶ 7, and "in Soho." Peralta Decl. ¶ 7. Villanueva adds, "I also heard about one location in Long Island," Villanueva Aff. ¶ 6, but does not elaborate.

    A.     **Plaintiffs' FLSA Claims**

Plaintiffs worked only at the East Village Location. *See* Peralta Decl. ¶ 12; Pl. Reply Mem. (Dkt. 39) at 4. Villanueva worked there as a dessert preparer from April 15 to October 8, 2021. FAC ¶ 14. She was told that her hourly wage would be $20, but from April 15 through August,

---

[1] *See* generally https://thepizzapusha.com (all websites last visited March 4, 2024).

2021, she worked 80 hours per week for $700 ($8.75 per hour), which she was paid "in cash in an envelope." *Id.* ¶¶ 36, 44-45. Thereafter, from September 2021 through October 2021, Villanueva worked 60 hours per week, for which she was paid $600 ($10 per hour). *Id.* ¶ 49. In October 2021, she was instructed to "take a week off because the restaurant is slow," and "was never called back to work." *Id.* ¶ 51. These allegations, the truth of which is assumed for pleading purposes only, state claims under the FLSA for unpaid minimum and overtime wages.[2]

Peralta worked as a cook from June 4, 2021 to sometime in November 2021. FAC ¶ 18. He never worked more than 40 hours per week, and was paid "by company checks and through a payroll service." *Id.* ¶¶ 53-56, 65. Peralta alleges that he was promised $20 per hour, and was "initially paid such" for the 36 hours he worked each week, but thereafter was required to work four additional hours each week (bringing his total weekly hours to 40), without any additional payment. *Id.* ¶¶ 55-56. At some point Peralta's manager, non-party Raul Avila, "began to cut Plaintiff Peralta's hours, "telling him the restaurant was slow," and "[e]ventually . . . took Plaintiff Peralta off the schedule." *Id.* ¶ 65. These allegations do not state any claim under the FLSA.[3]

---

[2] Under the FLSA, employers must "pay the higher of the federal or state minimum wage applicable during any given time period." *Cardenas v. Edita's Bar & Rest., Inc.*, 2021 WL 4480570, at *6 (E.D.N.Y. Sept. 30, 2021) (quoting *Reyes v. Lincoln Deli Grocery Corp.*, 2018 WL 2722455, at *5 (S.D.N.Y. June 5, 2018); *see also* 29 U.S.C. § 218(a). Although Villanueva's hourly rate was above the federal minimum wage of $7.25 per hour, *see* 29 U.S.C. § 206, it was below the then-prevailing New York State minimum wage of $15.00 (applicable to employers in New York City with more than 11 employees). *See* NYLL § 652(1)(a)(i). Employees who work more than 40 hours per week must be compensated for their overtime hours "at a rate not less than one and one-half times the regular rate at which [they are] employed." 29 U.S.C. § 207(a)(2)(C).

[3] Because Peralta was paid more than both the federal minimum wage of $7.25 per hour and the then-prevailing New York minimum wage of $15.00 per hour for all of the hours he worked, he has no unpaid minimum wage claim under the FLSA. His allegation that at some point he worked 4 extra hours each week without any additional pay (reducing his effective hourly wage from $20 to $18 for that period) does alter this result. *See Bueno v. Buzinover*, 2023 WL 2387113, at *4 n.4 (S.D.N.Y. Mar. 7, 2023) ("gap time claims," in which an employee who worked 40 hours per week or less seeks recovery of "unpaid time worked," are "cognizable under the NYLL, but not the

**B.     Procedural Background**

Plaintiffs filed this action on December 22, 2022, as a putative FLSA collective action, and amended their pleading on April 28, 2023, adding putative class claims, pursuant to Fed. R. Civ. P. Rule 23, under the NYLL. *See* FAC ¶¶ 69-97.[4] On May 9, 2023, plaintiff Villanueva filed her motion for conditional collective certification of her FLSA overtime claim, supported by her affidavit, Peralta's declaration, her memorandum of law, and the affirmation of plaintiffs' attorney Ria Julien (Julien Aff.) (Dkt. 31), attaching proposed notice and consent forms. Villanueva seeks to certify "an overtime class of all hourly non-management workers who have worked for [defendants] at any location, and worked in excess of 40 hours in any workweek at any time from December 22, 2019 to the present." Julien Aff. ¶ 2. In their moving affidavit and declaration (discussed in more detail below), both plaintiffs attest to their own hours and compensation, as alleged in their pleading. *See* Villanueva Aff. ¶¶ 14-21; Peralta Decl. ¶¶ 12, 15, 20. Additionally, both plaintiffs attest that they heard complaints from other (mostly unidentified) kitchen workers at the East Village Location about "not getting paid for overtime"; that all of the St. Ned Pizza locations were "jointly managed" by Barrett "as one"; and that plaintiffs "believed" that defendants' pay practices were "consistent across the locations." Villanueva Aff. ¶¶ 7, 23, 26, 29, 32 34; Peralta Decl. ¶¶ 8, 25, 27.

On June 2, 2023, defendants filed an opposition memorandum (Def. Opp. Mem.) (Dkt. 38), along with the declaration of Steven Siegler (Dkt. 37), proposing modifications to the proposed notice form, should the Court grant the collective certification motion. Defendants argue that plaintiffs have failed to identify any other employees who are "similarly situated" to plaintiff

---

FLSA") (collecting cases). Further, because Peralta never worked more than 40 hours per week, he has no unpaid overtime claim under the FLSA. *See* 29 U.S.C. §207(a)(2)(C).

[4] Plaintiffs do not appear to seek class treatment for their NYCHRL claims.

4

Villanueva, *see* Def. Opp. Mem. at 1, and that if any collective is certified, it should be limited to kitchen workers employed at the East Village Location within the past two years. *Id*. at 1-2, 8.

On June 12, 2023, Villanueva filed her reply memorandum, together with a reply declaration from Peralta (Peralta Reply Decl.) (Dkt. 41) asserting – for the first time – that in addition to his work in the kitchen he also served desserts in the dining room. Peralta Reply Decl. ¶ 6. Peralta adds – again, for the first time – that he twice heard (unnamed) servers complaining (on unspecified occasions) that they were not paid overtime, and on this basis concludes that "the failure to pay overtime extended beyond kitchen workers." *Id*. ¶¶ 7-11. Plaintiffs also filed a reply affirmation by attorney Julien (Julien Reply Decl.) (Dkt. 40), attaching a magazine article "which at page 12 sets forth facts regarding [Barrett's] pay practices." Julien Reply Decl. ¶ 2 & Ex. A.[5]

On June 12, 2023, defendants sought leave to file a motion to strike the reply papers to the extent they "asserted new facts" or relied on the *Curbed* article. (Dkt. 42.) The Hon. Valerie E. Caproni, United States District Judge, denied the request (noting that "[t]o the extent Plaintiffs raise arguments for the first time in their reply, the Court may . . . disregard them"), but granted defendants leave to file a sur-reply, limited to "any arguments Defendants assert were raised for the first time in reply." (Dkt. 43.) On June 20, 2023, defendants filed a sur-reply letter requesting that the Court disregard the "new evidence" submitted in Villanueva's reply papers. (Dkt. 44.) Additionally, defendants submitted affidavits from Jesus Guzman (the Head Chef at the East Village Location during plaintiffs' employment) and Hermelindo Viada Porfirio (a dishwasher and

---

[5] *See* Joy Bulgar, "Million Dollar Slice," *Curbed*, Jan. 21, 2021; *also available at* https://www.curbed.com/article/pizza-pusha-chris-barrett-pot-legalization.html. On page 12, the article states that Barrett took the reporter to see his prep kitchen in Williamsburg, Brooklyn (a location not mentioned by plaintiffs herein), where he handed new supplies to the cooks and paid them "in cash." The article says nothing about pay practices at the East Village Location (which apparently had not yet opened); nothing about the hours worked by any of defendants' employees; and nothing about the hourly rates they were paid.

line cook during that period), both of whom contradict Peralta's claim that he worked outside of the kitchen. *See* Guzman Aff. (Dkt. 44-1) ¶¶ 3-6; Viada Porfirio Aff. (Dkt. 44-2) ¶¶ 3-5.[6]

On July 24, 2023, this action was reassigned to the Hon. Gregory H. Woods, United States District Judge, and on July 25, 2023, Judge Woods referred the case to me pursuant to 28 U.S.C. § 636(b)(1)(A) for general pretrial management, including the determination of non-dispositive pretrial motions. (Dkt. 45.) Villanueva's motion for conditional collective certification is a non-dispositive pretrial motion within the scope of my reference. *See Hall v. City of New York*, 2023 WL 6318082, at *1 (S.D.N.Y. Sept. 28, 2023) (collecting cases); *Warman v. Am. Nat'l Standards Inst.*, 193 F. Supp. 3d 318, 321 n.1 (S.D.N.Y. June 27, 2016) ("Motions for conditional certification of a collective action under the FLSA are non-dispositive.").

## II.  DISCUSSION

### A.  Legal Standards

The FLSA provides that "any one or more employees" may bring an action against an employer "for and on behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). To become parties to such an action, employees other than the named plaintiff(s) must "opt in" by filing written consents in the court in which the action is brought. *Id.* "Although they are not required to do so by FLSA, district courts 'have discretion, in appropriate cases, to implement [§ 216(b)] . . . by facilitating notice to potential plaintiffs' of the pendency of the action and of their opportunity to opt-in as represented plaintiffs." *Myers*, 624 F.3d at 554 (quoting *Hoffmann–La Roche Inc. v. Sperling*, 493 U.S. 165, 169 (1989)).

---

[6] Both Guzman and Viada Porfirio add that, based on their own "experiences, information, and belief, all employees properly received overtime pay when required, including myself." Guzman Aff. ¶ 8; Viada Porfirio Aff. ¶ 6.

Courts in this Circuit apply a "sensible" two-step method for determining whether to exercise this discretion. *See Myers*, 624 F.3d at 554-55. In the first step – commonly known as "conditional certification" – the named plaintiffs must make a "'modest factual showing' that they and potential opt-in plaintiffs 'together were victims of a common policy or plan that violated the law,'" *id.* at 555 (quoting *Hoffmann*, 982 F. Supp. at 261), at which point the trial court may send (or direct plaintiffs' counsel to send) a notice to potential opt-in plaintiffs. *Id*. At the second stage, which typically occurs after discovery is completed, the court determines whether the plaintiffs who opted in are in fact "similarly situated" to the named plaintiffs. *Id*. If not, the court may "de-certif[y]" the collective and dismiss the opt-in plaintiffs' claims without prejudice. *Id*.

Because the purpose of this first stage is "merely to determine *whether* 'similarly situated' plaintiffs do in fact exist," plaintiffs have a low burden of proof. *Prizmic v. Armour, Inc.*, 2006 WL 1662614, at *2 (E.D.N.Y. June 12, 2006); *see also McGlone v. Cont. Callers, Inc.*, 867 F. Supp. 2d 438, 442 (S.D.N.Y. 2012) ("Because minimal evidence is available at this stage, this determination is made using a 'relatively lenient evidentiary standard.'") (quoting *Mentor v. Imperial Parking Sys., Inc.*, 246 F.R.D. 178, 181 (S.D.N.Y. 2007)). An adequate evidentiary showing that plaintiffs themselves "were subjected to certain wage and hour practices at the defendants' workplace and to the best of their knowledge, and on the basis of their observations, their experience was shared by members of the proposed [collective]" can be a sufficient basis from which to infer the "common policy" required for conditional certification. *Cortes v. New Creators, Inc.*, 2015 WL 7076009, at *3 (S.D.N.Y. Nov. 12, 2015) (citing *Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363, 368 (S.D.N.Y. 2007)). Documents properly considered at this stage "include plaintiffs' 'own pleadings, affidavits, declarations, or the affidavits and declarations of other potential class members.'" *Trinidad v. Pret A Manger (USA) Ltd.*, 962 F. Supp. 2d 545,

7

557-58 (S.D.N.Y. 2013) (quoting *Hamadou v. Hess Corp.*, 915 F. Supp. 2d 651, 661 (S.D.N.Y. 2013)).

While the plaintiff's burden of proof is low, "it is not non-existent," *Sanchez v. JMP Ventures L.L.C.*, 2014 WL 465542, at *10 (S.D.N.Y. Jan. 27, 2014), and certification "is not automatic." *Mata v. Foodbridge LLC*, 2015 WL 3457293, at *2 (S.D.N.Y. June 1, 2015); *accord Ji v. Jling Inc.*, 2016 WL 2939154, at *3 (E.D.N.Y. May 19, 2016); *Romero v. H.B. Auto. Grp., Inc.,* 2012 WL 1514810, at *10 (S.D.N.Y. May 1, 2012). The requirement of a "modest factual showing" cannot be satisfied solely by the "unsupported assertions" in the plaintiffs' pleading, *Myers*, 624 F.3d at 555, or by allegations made on "information and belief." *McGlone*, 867 F. Supp. 2d at 444. Evidence is required. *Id.*; *see also Cuaya v. VI Dev. Grp., LLC*, 2020 WL 5494371, at *3 (S.D.N.Y. Sept. 10, 2020) ("a plaintiff must offer 'actual evidence of a factual nexus' between his situation and those of other allegedly similarly situated employees") (quoting *Qing Gu v. T.C. Chikurin, Inc.*, 2014 WL 1515877, at *3 (E.D.N.Y. Apr. 17, 2014)); *Monger v. Cactus Salon & SPA's LLC*, 2009 WL 1916386, at *2 (E.D.N.Y. July 6, 2009) (rejecting plaintiffs' statements that they "believe[d]" employees at other locations were similarly situated where "[t]hey offer[ed] no basis for this belief," "name[d] no individuals at other salons who [were] similarly situated," and "provide[d] no documentary evidence that policies are the same").

In cases involving employees at multiple business locations, "courts consider whether the plaintiffs have made an adequate factual showing to support an inference that . . . a *uniform policy* or practice exists, and whether the locations share common ownership or management." *Trinidad*, 962 F. Supp. 2d at 558 (quoting *Hamadou*, 915 F. Supp. 2d at 662); *see also Rosario v. Valentine Ave. Disc. Store, Co., Inc.,* 828 F. Supp. 2d 508, 516–17 (E.D.N.Y. 2011) (collecting cases). Both showings are required; that is, even where it is clear that multiple business locations share common

ownership and management, plaintiffs must adduce enough evidence to support an inference of a common *wage policy* across all locations before a multi-location collective may be certified. *See, e.g.*, *Trinidad,* 962 F. Supp. 2d at 558-60 (declining to authorize notice to all Pret a Manger restaurant locations in New York City, or even to the full list of locations at which the named plaintiffs had worked, because "plaintiffs have not demonstrated across all locations a uniform policy of failure to pay overtime compensation"); *Laroque v. Domino's Pizza, LLC*, 557 F. Supp. 2d 346, 356 (E.D.N.Y. 2008) (conditionally certifying a group of employees at one pizza store, but declining to include employees at five other stores in the same chain, where plaintiffs made only "generalized allegations of wrongdoing" regarding one of the stores, supported by hearsay of questionable reliability).

During the conditional certification stage, the court "should not weigh the merits of the underlying claims," *Hamadou*, 915 F. Supp. 2d at 662 (citing *Lynch v. United Servs. Auto Ass'n*, 491 F. Supp. 2d 357, 368 (S.D.N.Y. 2007)), and should not "resolve factual disputes, decide substantial issues going to the ultimate merits, or make credibility determinations." *Jackson v. Bloomberg, L.P.*, 298 F.R.D. 152, 158 (S.D.N.Y. 2014) (internal quotation marks omitted). Accordingly, where there is a conflict between the parties as to the facts underlying plaintiffs' wage and hour claims, the court should treat plaintiffs' attestations as true. *See Cortes*, 2015 WL 7076009, at *1 n.1.

### B. Materials Considered

As Judge Caproni noted, the Court may disregard issues raised for the first time in reply. *See Keaswri v. Ramen-Ya Inc.*, 2022 WL 3152572, at *5 n.8 (S.D.N.Y. Aug. 8, 2022) ("This Court, as a general matter, does not consider issues raised in a reply brief for the first time, let alone an attorney declaration in support of that reply brief."); *Day Village Ltd. P'ship v. CW Cap. L.L.C.*, 2006 WL 2572118, at *3 (S.D.N.Y. Sept. 7, 2006) ("[T]he Court will not consider this affidavit as

9

arguments cannot be made for the first time in reply papers."). In this case, the Peralta reply declaration is particularly problematic. Not only are the new facts asserted therein different from those set forth in the FAC and his original declaration; he provides no explanation for his earlier failure to mention his dining room duties, or the comments he now says he heard from servers. Moreover, Peralta admits in his reply declaration that he understands and speaks only "some English," Peralta Reply Decl. ¶ 9, which raises questions not only about his ability to understand the servers' complaints, which were made in English, *id*., but also his ability to understand his own declarations, which are written entirely in English. Plaintiffs have submitted no evidence suggesting that either declaration was translated for Peralta, either in writing or orally.

Similarly, plaintiffs offer no explanation for their submission of the *Curbed* article (which dates from early 2021) for the first time with their reply papers. I note as well that the contents of the article are hearsay, *see* Fed. R. Evid. 801(c), as to which no exception applies, making it inadmissible for the truth of the statements made therein.[7] Thus, even if the article discussed the hours worked by any of defendants' employees, or the rates they were paid – which it does not, *see supra* n.5 – I would be reluctant to consider it for purposes of the pending motion.

Since I am disregarding the issues and evidence improperly raised for the first time in Villanueva's reply papers, I also disregard defendants' sur-reply submissions.

---

[7] Nor may the Court take judicial notes of facts stated in the article. Under Fed. R. Evid. 201(b), judicial notice of adjudicative facts is limited to facts that are "not subject to reasonable dispute" because they are either "generally known within the trial court's territorial jurisdiction" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Thus, while courts may "take judicial notice of the *fact* that press coverage . . . contained certain information," they must do so "without regard to the truth of their contents." *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008).

### C. Villanueva Has Not Made the Required Factual Showing

As noted above, Villanueva attests that from April 15 through August 2021, she was paid $700 for 80 hours of work per week (or $8.75 per hour), with no overtime premium, and then, in September and October 2021, was paid $600 for 60 hours of work per week (or $10 per hour), with no overtime premium. Villanueva Aff. ¶¶ 15-20. She thus provides evidence which, if credited, would show that her compensation violated the overtime provision of the FLSA. *See* 29 U.S.C. § 207(a)(2)(C). In order to obtain conditional certification of an FLSA collective, however, she must make a factual showing that her co-workers – or at least some definable subset of her co-workers – were "similarly situated in the ways that matter," *Campbell v. City of New York*, 2017 WL 3206332, at *8 (S.D.N.Y. July 25, 2017); that is, that they too worked more than 40 hours per week without being paid the required premium of one and one-half times their regular rate of pay for each overtime hour.

Even under the "relatively lenient" standards applicable to a § 216(b) motion, *McGlone*, 867 F. Supp. 2d at 442, Villanueva has failed to make the required showing. In her own affidavit, she does not identify a single coworker – by name, nickname, description, or otherwise – who worked more than 40 hours per week without any overtime premiums, or who complained about that. Instead, she states in broad and conclusory terms that she had "many coworkers who I believe had the same treatment" as herself, Villanueva Aff. ¶ 23, and that:

> Everyone – cooks, prep cooks and dishwashers – complained about not getting paid for overtime. I would hear some coworkers complaining and others would speak to me about not getting paid overtime. People seemed to complain about not getting paid overtime on a weekly basis, when they received their pay.

*Id.* ¶ 29.[8] Villanueva adds, in equally conclusory terms, that she "know[s] of no St. NED worker who received overtime pay when they work more than forty (40) hours per week," *id.* ¶ 32, and that she worked long hours without overtime pay and "believe[s] all [her] coworkers were treated similarly." *Id.* ¶ 34.[9]

Peralta, for his part, attests that he knows of two other St. Ned employees who worked "56 to 60 hours per week," Peralta Aff. ¶ 17, but he does not identify them, and does not state whether they were or were not paid overtime for their hours in excess of 40 per week. Peralta goes on to attest that "Victor" and "Jesus" (who may or may not be the two who worked 56 to 60 hours per week) complained to him that they were not receiving overtime wages, as did "many others," including his co-plaintiff, Villanueva. Peralta Aff. ¶¶ 17-18. Peralta then asserts, in language identical to Villanueva's, that he "know[s] of no St. NED worker who received overtime pay when they work more than forty (40) hours per week," *id.* ¶ 25, and that he "believe[s] all [his] coworkers and [plaintiff Villanueva] were treated similarly." *Id.* ¶ 27. As to the two coworkers whom Peralta identifies by name – Victor and Jesus – he does not identify their jobs, does not provide any information about their schedules, and does not state when or where they complained about their wages, or what they said.

With regard to the other St. Ned's locations, plaintiff Villanueva states in conclusory terms that they were "managed and operated as one," Villanueva Aff. ¶ 7, while Peralta attests that he

---

[8] The only coworker whom Villanueva identifies by name (other than Peralta) is "Jesus." Villanueva Aff. ¶ 23. As to Jesus, however, Villanueva states only that he was "among the coworkers that this happened to." *Id.* She does not identify Jesus's job, his hours, or his pay. Nor does she recount any conversation with Jesus, at any time, or provide any other information about how she came to learn that "this happened" to him. It is not even clear, in context, what it is that Villanueva believes "happened to" Jesus.

[9] Villanueva does not discuss – or even mention – the fact that her coworker Peralta, who is now her co-plaintiff, did *not* work long hours and was *not* deprived of earned overtime.

12

"believe[s] the practices with respect to pay were consistent across the locations." Peralta Decl. ¶ 8. As support for these statements, however, plaintiffs offer only: (i) that they prepared food to be used at other locations, *see* Villanueva Aff. ¶ 9; Peralta Decl. ¶ 9; (ii) that a manager named Adriana Pacheco "was in charge of sending food to all the different locations," Villanueva Aff. ¶ 8; and (iii) that some employees worked in more than one St. Ned's location. Villanueva Aff. ¶ 11; Peralta Decl. ¶ 11. Neither plaintiff claims to have worked in any location other than the East Village Location, to have spoken to any coworkers about the pay practices at other locations, or to have any other direct or indirect knowledge of pay practices at other locations.

It is well-settled that an FLSA plaintiff's unsupported "belief" about the wages and hours of her coworkers is insufficient to carry even her low burden of proof for conditional certification of a collective. *McGlone*, 867 F. Supp. 2d at 444; *Monger*, 2009 WL 1916386, at *2. Similarly, Villanueva's broad-brush statement that "everyone – cooks, prep cooks and dishwashers – complained about not getting paid for overtime," with no details about any specific conversation, with any identifiable individual, at any point in time, lacks the requisite "evidentiary value to demonstrate that similarly situated employees exist." *Hernandez v. City of New York*, 2017 WL 2829816, at *4 (S.D.N.Y. June 29, 2017) (quoting *Benavides v. Serenity Spa NY Inc.*, 166 F. Supp. 3d 474, 481 (S.D.N.Y. 2016)).

At the conditional certification stage, an FLSA plaintiff may rely on her observation of coworkers, or on conversations with those coworkers, but she "must provide a minimum level of detail regarding the contents of those conversations or observations." *Racey v. Jay-Jay Cabaret, Inc.*, 2016 WL 3020933, at *4 (S.D.N.Y. May 23, 2016) (quoting *Reyes v. Nidaja, LLC*, 2015 WL 4622587, at *3 (S.D.N.Y. Aug. 3, 2015)). Absent some factual detail, "the Court does not know where or when these observations or conversations occurred, which is critical in order for the Court

13

to determine the appropriate scope of the proposed class and notice process." *Sanchez*, 2014 WL 465542, at *2. Thus, in *Sanchez*, the court declined to certify a collective where the plaintiff attested to his "'observations' and 'conversations' with other employees (whose first names he lists)," but failed to "provide *any* detail as to a *single* such observation or conversation." *Id*. [10]

Plaintiff Peralta's showing suffers from the same deficiencies. The Court cannot fairly infer, from his submission, that Victor, Jesus, or any other kitchen employee at the East Village Location (much less front-of-house employees, or those in other locations) worked more than 40 hours per week without any overtime premium. That Victor and Jesus are identified only by first name is "not necessarily a shortcoming," *Zamora v. L Plus L Prods. LLC*, 2019 WL 5460559, at *5 (S.D.N.Y. Oct. 15, 2019); however, Peralta's failure to identify their jobs, their hours, or any details whatsoever about the conversations he had with them (other than that they "personally complained," at unspecified times and locations, "that they were not being paid overtime," Peralta

---

[10] *See also*, *e.g.*, *Adam v. Bloomberg L.P.*, 2023 WL 3814252, at *5 (S.D.N.Y. June 5, 2023) (denying conditional collective certification motion where plaintiffs failed, among other things, to identify individuals who "potentially [had] the same duties and raise the same claims"); *Hickmon v. Fun & Fit LLC*, 2021 WL 3578296, at *5-6 (S.D.N.Y. Aug. 13, 2021) (denying motion where plaintiffs attested to conversation with "numerous other health aide employees of Defendants" who said that "they also were paid below minimum wage for many hours worked and also were not paid any money at all for many hours that they worked," but failed to "identify any potentially similarly situated employees by name," did not "disclose how many employees [plaintiffs] conversed with," and provided "no information regarding the timing or circumstances of any of these conversations"); *Benavides*, 166 F. Supp. 3d at 481-82 ("When plaintiffs base their assertions regarding similarly situated employees upon their own observations and conversations with other employees, courts have required details about these observations and conversations, such as where and when they occurred and the names of the employees involved."); *Qing Gu*, 2014 WL 1515877, at *5 (denying motion where plaintiffs did not mention "names of fellow employees whom they observed or with whom and when they had conversations about not receiving minimum wage or overtime compensation," nor did they "identify the job titles or duties performed by their fellow employees" and thus failed to provide "a factual basis for the court to consider whether the employees plaintiffs refer to are similarly situated to them"); *Silva v. Calle 8, LLC*, 2013 WL 6330848, at *3 (E.D.N.Y. Dec. 5, 2013) (denying motion where plaintiff failed to, among other things, "identify the job duties performed by his fellow employees whom he observed or with whom he conversed").

Decl. ¶ 17), falls short of providing "a factual basis for the court to consider whether the employees plaintiffs refer to are similarly situated to them." *Qing Gu*, 2014 WL 1515877, at *5.

The lack of detail regarding other kitchen workers at the East Village Location is particularly glaring given that Peralta himself – as he concedes – was *not* similarly situated to Villanueva with respect to either his hours (which were never more than 40 per week) or his wages (which were always above both the federal and the state minimum wage), and consequently he has no FLSA overtime claim. FAC ¶¶ 53-56; Peralta Decl. ¶¶ 15, 20. In this case, therefore, even as to the kitchen workers at the East Village Location, plaintiff Villanueva "has not satisfied the burden, however low," *Ikikhueme v. CulinArt, Inc.*, 2013 WL 2395020, at *2 (S.D.N.Y. June 3, 2013), of demonstrating that potential opt-in plaintiffs are similarly situated to her.

### D. Discovery

Although the present record does not permit the conditional certification of a collective pursuant to 29 U.S.C. § 216(b), evidence could be uncovered during discovery that renders certification appropriate. In that event, Villanueva may renew her motion. *See Tian v. Star Nail Salon, Inc.*, 2022 WL 20598324, at *5 (E.D.N.Y. Jan. 4, 2022) (denying conditional certification motion without prejudice); *Ji*, 2016 WL 2939154, at *5 (same).

The Court notes that discovery was stayed in this action shortly before the collective certification motion was filed (*see* Dkt. 17), and no initial pretrial conference was held. The discovery stay is now lifted. The Court will hold an initial conference in accordance with Fed. R. Civ. P., on **April 3, 2024, at 10:00 a.m.** A separate scheduling order will issue.

15

### III.    CONCLUSION

For the foregoing reasons, plaintiffs' motion for conditional collective certification (Dkt. No. 30) is DENIED without prejudice.

Dated: New York, New York  
March 4, 2024

SO ORDERED.

_____  
**BARBARA MOSES**  
**United States Magistrate Judge**